### In re JACOBS & ROTH.

#### (District Court, W. D. Pennsylvania. May 2, 1907.)

#### No. 3,488.

1. BANKRUPTCY—SELECTION OF TRUSTEE—RIGHT OF CREDITORS TO ELECT.

The selection of a trustee in bankruptcy is properly and primarily the business of the creditors, who are owners of the fund which must bear the expense of administration, and where a majority in number and in amount of claims have voted for one person for trustee the referee is not justified in refusing to ratify his election solely because he does not reside in the county where the assets are situated and in appointing another person trustee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 168–183.]

2. SAME—EXAMINATION OF BANKRUPT—SCOPE.

Under Bankr. Act July 1, 1898, c. 541, § 7 (9), 30 Stat. 548 [U. S. Comp. St. 1901, p. 3425], which authorizes the examination of a bankrupt "concerning the conduct of his business, * * * his dealings with his creditors and other persons, the amount, kind and whereabouts of his

property," etc., a question as to whether a bankrupt did not make a certain statement in writing as to his assets within a few months prior to his bankruptcy upon which he obtained property on credit from certain of his creditors is material and proper to be asked him on his examination.

In Bankruptcy. Sur certificate from referee.

William Murrin and John Murrin, for bankrupts and trustee.
Sachs & Hirshfield, for creditors.

EWING, District Judge. The questions raised by the certificate from the referee in this case go to the validity of the election of a trustee of said bankrupt estate and the ruling of the referee upon interrogatories to one of the bankrupts during his examination.

The meeting of creditors was held at Butler, Butler county, Pa., February 28th last, and before proceeding to the election of a trustee the referee announced to the creditors and their representatives there present that "he would refuse to approve the election of a trustee residing outside of the county, so long as there was a capable man residing near the assets of the estate who was willing to serve," and he also told representatives of the creditors who were not present that they would be required to produce letters of attorney for their authority to act for such creditors before they could take part in the election of a trustee. Mr. Adolph Steele and Mr. George Sapper were nominated for trustee, and at the conclusion of the election the referee announced that while Mr. Sapper had received a majority of the number of creditors and of the amount of the claims, yet, for the reason he had stated, he would not approve his election, and thereupon appointed Mr. Steele. In his certificate the referee states that, while he made that announcement, it was the result of an error in the calculation of the different claims, and that really the claims as then voted gave Mr. Steele a majority, while Mr. Sapper had a majority of the creditors. He also states in a supplementary certificate filed that one of the claims voted at that time for Mr. Steele, and calculated at the amount of $405, was subsequently reduced to $360, by reason of credits to which the bankrupts were entitled which had not been previously allowed them. With this reduction the referee's announcement at the time of the election was correct, leaving Mr. Sapper at that time the recipient of the votes of a majority of the creditors in number and of the amount of claims. Mr. Sapper is a resident of Allegheny county, and not of Butler, and it was on that account that his election was not approved. No objection whatever to his competency was taken.

The reason assigned by the referee for objecting to a trustee residing outside of the county in which the bankrupt's estate is located is that he has by experience found that the expenses and charges of the trustee and of his attorney are greatly increased, and that his action in this case was actuated by no feeling for or against either candidate, but arose from a desire on his part to serve the estate and diminish the expenses incident to its settlement. This motive is commendable, but inasmuch as the referee has large control over the compensation allowed trustees and their counsel, and since such compensation

is properly based on services rendered and not on traveling expenses to and from the point of settlement of estates, there does not appear to be any reason why the compensation of a trustee, except in occasional cases and under peculiar circumstances, should be either increased or diminished by reason of the place of residence of such trustee and counsel. The selection of a trustee is properly and principally the business of the creditors, and it is their fund from which his compensation must come. Under all ordinary circumstances they can be relied upon to have the question of the diminution of the fund by reason of such compensation in mind when they proceed to the election of a trustee. The designation, then, by the referee of Mr. Steele as trustee in this case was an error, and especially so in view of the fact that Mr. Sapper presented a stipulation to the effect that he would not charge for any expenses incurred by him by reason of his residence outside of the county.

Another fact in connection with the election is that, when called upon to produce the powers of attorney by virtue of which certain creditors were represented at that election, the referee is unable to find powers of attorney for two of the creditors whose votes were cast and counted for Mr. Steele, representing a little over $200 in amount of claims. The referee states, however, that to the best of his recollection those claims were voted upon powers of attorney, but one of those creditors denies having given any such authority. The whole aspect of the case gives one the impression that the referee was taking too active an interest in the selection of a trustee. It is not the part of a referee to identify himself in any manner with the interest of either the bankrupt, or his creditors, or the counsel interested in the case. His duty is to keep himself entirely free from any interest or any manifestation of interest in the case one way or the other, and the more perfectly he can accomplish this the better can he perform the duties of his position. It now appears that the estate of these bankrupts has all been disposed of, and that practically nothing remains but the distribution of the assets. Mr. Steele having qualified under his appointment by the referee and given the required security, his actions were at least those of a de facto trustee, however irregular his election may have been; and, since he has conducted the business of the office to a practical conclusion thereof, it would accomplish no good purpose and might involve the estate in additional expense to now oust him and place another in charge at this late date.

It is alleged by the creditors that his disposition of the bankrupt's estate was made without any notice to them, and if this be the case, and the amount realized from the estate should appear inadequate in consequence, the result may be that he may be personally responsible to the creditors for mismanagement. For this reason, also, it is perhaps better to retain him in his position until his account is settled and the estate finally distributed. The fact, however, that no ouster is decreed in this case must not be regarded as a precedent.

In the course of the examination of Jacob Jacobs, one of the bankrupts, Mr. Sachs, representing certain of the creditors, showed the witness a paper, being a statement of credit made to the Fushan-Zeman Shoe Company in September last, and asked him if he had signed it.

Objection was made to the question, and the referee ruled that the witness was entitled to at least a statement of the purpose, to which Mr. Sachs replied, "Purpose to show that the witness made a written statement on or about September 4, 1906, that it is material, that the testimony given by him at this hearing as regards the financial condition of the partnership about said time," presumably meaning thereby that it is material with reference to the testimony given by him at this hearing to know the financial condition of the partnership about said time. The referee ruled that this question had relation more to an application for discharge than to an examination of the bankrupt at this time, and sustained the objection. The offer was then renewed, and the further reason given that it is for the purpose of proving that on the strength of the written statement offered the bankrupt obtained credit and merchandise from one of the present creditors, and that this is within the scope of the purpose of an examination of the bankrupt, which is for the purpose of disclosing all his affairs and dealings with his creditors. Upon the objection being renewed, it was again sustained, and a certificate asked for. In support of his ruling in this matter the referee now states, although he did not assign this reason at the time of the examination, that the Fushan-Zeman Shoe Company does not appear as a creditor in the schedules filed by the bankrupt, while counsel now states that if that reason had been assigned at the time he would then have stated that this same statement had been presented to other parties who were then represented as creditors of the bankrupts, and that in consequence of this statement they had given the bankrupts the credit upon which their claims were now based. The referee also quotes from section 7, par. 9, of the bankrupt act of July 1, 1898, c. 541, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3425], that "the bankrupt shall when present at the first meeting of his creditors and at such other times as the court shall order, submit to an examination concerning the conduct of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate," and states that he regards the purpose and intent of this language as being to provide for an examination of the bankrupt as to the causes of his bankruptcy, the location or disposition of any part of his estate, and to discover if he has omitted to enumerate any part of his estate in his schedules, etc. The very clause of the bankrupt act quoted by the referee authorizes the examination of the bankrupt as to any matter which will aid his creditors in ascertaining what has become of the property with which at any time within a reasonable period prior to the bankruptcy proceeding he has certified himself as being possessed of, in order to enable them to ascertain whether or not he has been guilty of making fraudulent disposition of his property or otherwise disposing of the same to their prejudice, and also to learn generally regarding the character and amount of his estate at that time as compared with the present, and his conduct and disposition thereof in the meantime. It is not intended by this to state that a general voyage of discovery is to be authorized covering any and every period of the bankrupt's business dealings and transactions, but only

such as within a reasonable time of the bankrupt proceeding can fairly be taken to shed some light upon his affairs at that time.

In this case the question propounded and the purpose thereof seem to be entirely within the purview of the bankrupt act, and the question should have been allowed.